UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

PACER Cover Sheet
for Electronically Filed Documents

Any data shown here are current as of 06/10/06. Any element of information on this form, except the received date, is subject to change as changes may be made to the Court's official docket.

| | |
|---|---|
| **Case Title:** | New Mexico Energy Federal Credit Union v. Garon L. Fulgenzi |
| **Case Number:** | 04-01170 |

### Document Information

| | |
|---|---|
| **Description:** | Memorandum Opinion re: [11-1] Motion For Summary Judgment by New Mexico Ene Federal Credit Union . |
| **Received on:** | 2005-02-15 09:56:20.000 |
| **Date Filed:** | 2005-02-15 00:00:00.000 |
| **Date Entered On Docket:** | 2005-02-15 00:00:00.000 |

### Filer Information

| | |
|---|---|
| **Submitted By:** | Ellen Snyder |

**If this form is attached to the document identified above, it serves as an endorsed copy of the document as it existed on the above date. To confirm that nothing has changed since then, review the docket.**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

**In re:**

    **Garon L. Fulgenzi,**
    **Debtor.**                                     **No. 7-04-13771 MA**

**New Mexico Energy Federal Credit Union,**
    **Plaintiff,**

**v.**                                                  **Adv. No. 04-1170 M**

**Garon L. Fulgenzi,**
    **Defendant.**

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion for Summary Judgment (the "Motion") filed on December 7, 2004 by the Plaintiff, New Mexico Energy Federal Credit Union (the "Plaintiff"), represented by Kevin D. Hammar, Esq. The Plaintiff seeks summary judgment or partial summary judgment on the single count of the Complaint which requests a judgment denying discharge of a debt under 11 U.S.C. § 523(a)(2)(B). Garon L. Fulgenzi (the "Debtor"), represented by Michael K. Daniels, Esq., filed a Response In Opposition to the Motion (the "Response") on December 27, 2004. Having considered the pleadings, evidence, arguments of counsel and being otherwise sufficiently informed, the Court finds:  .

Undisputed Facts

1. In December 1997, the Plaintiff entered into an open-end credit arrangement with the

1

Debtor and his wife, Jaonne Fulgenzi.[1]  Motion Exhibit A.

2.  In connection with the open-end credit arrangement, the Debtor and Jaonne Fulgenzi submitted a credit application, which provided employment information, monthly wages and earnings, assets and liabilities.  Motion Ex. A.

3.  Under the open-end credit arrangement, the Debtor was allowed to request credit either verbally or in writing.  Affidavit of Diane Carmean, Vice President of lending for Plaintiff ("Carmean Affidavit").  To maintain the open-end credit line, the Plaintiff periodically required verification of the Debtor's income and employment.  Carmean Affidavit ¶ 4.

4.  On March 6, 2000, the Debtor and Jaonne Fulgenzi submitted a second credit application to renew the open-end credit arrangement.  Motion Ex. B (the "2000 Credit Application").  The 2000 Credit Application showed that the Debtor had a monthly gross income of $6,000.00 from Fugi Corporation.  The 2000 Credit Application also required the Debtor and Jaonne Fulgenzi to list all of their liabilities.

5.  Fugi Corporation is a subchapter S corporation in which Debtor is the sole shareholder and sole officer.  Fulgenzi Deposition at p. 13-14.

6.  In addition to the 2000 Credit Application, the Debtor submitted his 1999 tax return and W-2 statements.  Motion Ex. C.  The 1999 W-2 statements indicated that Debtor earned $60,000.00

---

[1] The 1997 credit agreement originated with ALO Employee's Federal Credit Union, predecessor to Plaintiff.  Affidavit of Diane Carmean, Vice President of lending for Plaintiff.  The 1997 Credit Application was submitted by Debtor and his then wife, Jaonne L. Fulgenzi.  The Debtor and Jaonne L. Fulgenzi were divorced in 2003.  Deposition of Garon L. Fulgenzi, dated July 12, 2004 ("Fulgenzi Deposition").

2

from Fuji Corporation and over $49,000.00 from Rich Mazda Subaru Kia.

7. In addition to the 2000 Credit Application, Plaintiff obtained credit reports on the Debtor and Jaonne Fulgenzi. Those credit reports raised no "red flags," i.e. showed no inconsistencies with the 2000 Credit Application. Carmean Affidavit ¶ 7.

8. Based on the 2000 Credit Application, the 1999 tax return, the 1999 W-2 statements and the credit reports, Plaintiff renewed the open-end credit arrangement with the Debtor and Jaonne Fulgenzi, on March 6, 2000, and made further extensions of credit on August 16, 2000, September 20, 2000 and June 27, 2001. Carmean Affidavit ¶ 8.

9. In July of 2002, the Debtor verbally requested another extension of credit. Carmean Affidavit ¶ 9. In response to the Plaintiff's request for income verification, the Debtor stated that he did not have his 2001 tax returns at that time. Instead, the Debtor gave the Plaintiff an unfiled tax return for 2000 (the "2000 tax return") and W-2 statements for 2000 (the "2000 W-2 statements"). Carmean Affidavit ¶ 10 and Motion Ex. D; Fulgenzi Deposition p. 12 lines 5-10. The 2000 tax return was signed by the Debtor and Jaonne Fulgenzi on or about February 25, 2002. Motion Ex. D.

10. The 2000 tax return and the 2000 W-2 statements showed that the Debtor earned a total of $213,561.00, which included $160,000.00 from Fugi Corporation. Motion Ex. D.

11. The Plaintiff obtained an updated credit report in July 2002, which also raised no "red flags." Carmean Affidavit ¶ 11. Based on the 2000 tax return, the 2000 W-2 statements and the credit report, Carmean authorized credit extensions on July 19, 2002 and on July 22, 2002 to the Debtor and Jaonne Fulgenzi. Carmean Affidavit ¶ 11; Motion Exs. E and F. These loans were secured by two vehicles. Carmean Affidavit ¶ 11.

3

12. During the week of August 11, 2003, the Plaintiff received from the Debtor a signed tax return for 2000, which was filed with the IRS. This tax return showed a loss in the amount of $43,131.00 incurred by Fugi Corporation. Motion Ex. H.

13. The Plaintiff seeks to have the current outstanding balance of the July loans in the amount of $34,257.75[2] plus interest and attorney's fees declared non-dischargeable.

14. Beginning in 1997, LeRoy and Warren Fulgenzi, members of the Debtor's family, obtained cash advances from credit cards and contributed those funds to Fugi Corporation. Fulgenzi Affidavit ¶¶ 40-43. These transactions were listed on the Debtor's bankruptcy schedules as unsecured debts to LeRoy Fulgenzi for $75,000.00 and to Warren Fulgenzi for $20,000.00. On the 2000 Credit Application the Debtor stated that he was not co-maker or co-signer of any other promissory notes and that all liabilities had been listed. Carmean Affidavit ¶ 6. The Debtor did not list any debts owed to LeRoy and Warren Fulgenzi on the 2000 Credit Application. Motion Ex. B.

16. The Debtor filed this Chapter 7 bankruptcy on May 19, 2004.

## Discussion

Summary judgment is governed by Rule 56, Fed.R.Civ.P., which is made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. Rule 56 provides that judgment shall be rendered if all pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there are no genuine issues of any material fact and the moving party is entitled to judgment as a

---

[2] This is the outstanding amount due on only one of the loans. At the time of the couple's divorce, Jaonne Fulgenzi obtained a new loan from the Plaintiff to pay off the balance of one of the loans.

4

matter of law. An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Adler v. Wal-Mart Stores, Inc.* 144 F.3d 664, 670 (10th Cir. 1998), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. *Id.* In determining whether any genuine issues of material fact exist, the court must construe the record liberally in favor of the party opposing the summary judgment. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988)(citation omitted).

Exceptions to discharge must be "narrowly construed" with doubt to be resolved in the debtor's favor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997). A creditor seeking to except a debt from discharge must prove each element of § 523(a)(2)(B) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). To obtain summary judgment of non-dischargeability, the Plaintiff must show that no genuine material fact issues exist as to each of the required elements of § 523(a)(2)(B). Section 523(a)(2)(B) provides:

> (a) A discharge under section 727, . . . does not discharge an individual from any debt–
> . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> . . .
> (B) use of a statement in writing–
>
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive; . . .

5

11 U.S.C. § 523(a)(2)(B).

The Plaintiff alleges that the false written statements upon which it relied in extending the July 2002 credit were contained in the 2000 Credit Application and in the signed but unfiled 2000 tax return and the 2000 W-2 statements submitted in July 2002. It is undisputed that these statements were in writing and concern the Debtor's financial condition. *Skull Valley Band Of Goshute Indians v. Chivers (In re Chivers)*, 275 B.R. 606, 615 (Bankr.D.Utah 2002)(under §523(a)(2)(B) false written statement must describe debtor's net worth, overall financial health, or ability to generate income). Therefore, the Plaintiff is entitled to a finding in its favor on the element of § 523(a)(2)(B)(ii) requiring a written statement regarding financial condition.

The Plaintiff argues that the 2000 Credit Application, the 2000 tax return and the 2000 W-2 statements were materially false because they misrepresented the amount of Debtor's income and liabilities. The 2000 Credit Application states that Debtor's income was $6,000.00 per month from Fugi Corporation. According to the corrected 2000 tax return submitted to the Plaintiff in 2003, the Debtor incurred a loss of $43,131.00 from Fugi Corporation and earned a total of $8,613.00 from other sources. The Plaintiff also failed to disclose the loans he received from LeRoy and Warren Fulgenzi on the 2000 Credit Application.

The Debtor asserts that when he submitted the 2000 Credit Application in March of 2000, it was true and correct to the best of his knowledge and belief. Fulgenzi Affidavit ¶ 18. The Debtor states that in March 2000, Fugi Corporation had been paying his monthly mortgage and car payments, which were more than $6,000.00 per month. Therefore, the income of $6,000.00 per month reported on the 2000 Credit Application was not materially false. Fulgenzi Affidavit ¶ 33. However, the Debtor

6

admits that the 2000 tax return and the 2000 W-2 statements given to the Plaintiff in July 2002 showing earnings in excess of $200,000 out of which $160,000.00 was from Fugi Corporation, incorrectly inflated his income. Fulgenzi Affidavit ¶ 27. The Debtor asserts that the funds from LeRoy and Warren Fulgenzi were not loans but were cash investments in Fugi Corporation made in exchange for ownership interests. Fulgenzi Affidavit ¶ 40. However, there is no evidence that LeRoy and Warren Fulgenzi were issued stock in Fugi Corporation or that income from Fugi Corporation was paid to LeRoy and Warren Fulgenzi. The Debtor explains that he listed LeRoy and Warren Fulgenzi as creditors on his bankruptcy schedules because at that time Fugi Corporation was not operating. Fulgenzi Affidavit at ¶ 40. By contrast, the Debtor states that he attempted to repay LeRoy and Warren Fulgenzi by causing Fugi Corporation to pay the minimum balances on the credit cards from which the cash investments were acquired. Fulgenzi Affidavit ¶ 42.

The Court could conclude that in March of 2000 the income shown on the 2000 Credit Application was not materially false because Fugi Corporation was paying the Debtor's mortgage at that time. However, the credit at issue in this proceeding was extended in July 2002. In July 2002, the statement of income on the 2000 Credit Application was false, and the Debtor failed to correct it. Therefore, the Plaintiff has shown that the 2000 Credit Application, the 2000 tax return and W-2 statements were materially false when submitted to the Plaintiff in July 2002. The Court will grant summary judgment on this element.

Two elements from § 523(a)(2)(B) remain: 1) whether the Plaintiff reasonably relied on the written statements in extending the credit to the Debtor in July 2002; and 2) whether the Debtor had the requisite intent to mislead the Plaintiff.

7

To meet the element of reliance, the Plaintiff must show that it relied on the 2000 Credit Application, the 2000 tax return and the 2000 W-2 statements in extending the loans in July 2002 and that the reliance was reasonable. *Matter of Esposito*, 44 B.R. 817, 824 (Bankr. N.Y. 1984)(granting summary judgment on all elements, including reasonable reliance). The loan officer stated that in approving the extension of credit in July 2002, she relied on the 2000 Credit Application, primarily on the statements of income and liabilities, and the verification of income contained in the 2000 tax return and the 2000 W-2 statements. Carmean Affidavit ¶¶ 8-11. Carmean also stated that even though the extensions in July 2002 were secured, "the most important factor in our decisions is the ability to pay. That means the credit union relies mostly on the debtor's reported income. I relied on the information in the tax returns in deciding to authorize the requested extensions." Carmean Affidavit ¶ 11. Carmean further stated, "[t]he credit union would not have extended any of the credit beginning in 2000, including both July 2002 extensions, had it known the true picture of the Fulgenzis' financial circumstances, i.e. that shown in the 'second' 2000 tax return." Carmean Affidavit ¶ 19.

The Debtor argues first that the Plaintiff did not in fact rely on the 2000 tax return and the 2000 W-2 statements in extending credit in July 2002 and next, that the reliance, if any, was unreasonable. The Debtor argues that when the Plaintiff renewed the credit arrangement in March 2000 and extended the credit in July 2002, it relied as much or more on the Debtor's credit reports and on its ongoing relationship with the Debtor than on the 2000 tax return and 2000 W-2 statements. The Debtor also asserts that the Plaintiff admitted that it relied at least in part on the value of the collateral in extending the credit. Carmean Affidavit ¶ 11. According to the Debtor, fact issues preclude a finding that the Plaintiff relied on the false information in extending the credit. However, a creditor does not have to

8

rely solely on the false written statement to show reliance under § 523(a)(2)(B). *See Central Nat'l Bank & Trust Co. v. Liming (In re Liming)*, 797 F.2d 895, 898 (10th Cir. 1986)(citation omitted)("Partial reliance is enough. A lender easily can rely on a financial statement and a security interest in making a loan."). According to the loan officer, if Plaintiff had received the corrected tax return for 2000, reflecting Debtor's true income, Plaintiff would not have made the loan in July 2002. Carmean Affidavit ¶ 19. The Court finds that the Plaintiff has established that it relied on the false statements contained the 2000 tax return and the 2000 W-2 statements given to it in 2002 in addition to the 2000 Credit Application when it extended the loan at issue.

Reliance on a false statement is reasonable if there is some basis for relying on the debtor's representation. *Leadership Bank v. Watson (In re Watson)*, 958 F.2d 977, 978 (10th Cir. 1992). In 2000, the Plaintiff verified the information on the 2000 Credit Application by obtaining a credit report. This report raised no "red flags," i.e. it showed no information that was inconsistent with the 2000 Credit Application. Carmean Affidavit ¶ 7. Again in 2002, the Plaintiff verified the information given to it in the 2000 Credit Application, the 2000 tax return and the 2000 W-2 statements by ordering a credit report. The credit report showed no information suggesting that the Debtor's financial circumstances had changed since the 2000 Credit Application. Carmean Affidavit ¶ 11. Contrary to the Debtor's assertion, the ongoing relationship between the Plaintiff and the Debtor under the open-end credit arrangements shows that the Plaintiff could reasonably rely on the information given and verified through a credit check. *See Watson,* 958 F.2d at 980 (finding reasonable reliance where no inconsistencies in financial statement that would have alerted bank to falsity and where debtor introduced to bank officer by regular and well known customer of the bank who guaranteed the loan);

9

*but cf. In re Mullet*, 817 F.2d 677, 681 (10th Cir. 1987)(upholding finding of unreasonable reliance where bank loaned to twenty-three year old debtor who was new bank customer, the credit report showed inconsistencies with financial statement, and minimal investigation would have uncovered misrepresentation). Unlike the situation in *Mullet*, there were no "red flags" either in the 2000 Credit Application, the 2000 tax return and the 2000 W-2 statements or in the credit reports that would alert the Plaintiff of the need to further verify the Debtor's income and liabilities. The written material on its face did not contain inconsistencies that would reveal possible misstatements or omissions or that should have prompted the Plaintiff to investigate further. *Nissan Motor Acceptance Corp. v. Ferrell (In re Ferrell)*, 213 B.R. 680, 687 (Bankr. N.D. Ohio 1996)(outlining cases finding that creditor did not reasonably rely on false information because creditors failed to obtain minimal verification of creditworthiness); *Arkansas Aluminum Alloys, Inc. v. Joyner (In re Joyner)*, 132 B.R. 436, 441 (D. Kan. 1991)(finding reasonable reliance where financial statement appears to be complete in and of itself). Therefore, the Plaintiff has shown that when it extended the credit in July 2002, its reliance on the 2000 Credit Application, the 2000 tax return and the 2000 W-2 statements, which were not contradicted by the credit check, was reasonable.

The final element of § 523(a)(2)(B) is whether the Plaintiff has shown that in July 2002, the 2000 Credit Application and the 2000 tax return and the 2000 W-2 statements were submitted with an intent to deceive. The Plaintiff correctly argues that because all of the other elements of § 523(a)(2)(B) have been shown, the Court may infer intent to deceive. *See Driggs v. Black (In re Black)*, 787 F.2d 503, 505-06 (10th Cir. 1986), *abrogated on other grounds*, *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Plaintiff argues that the magnitude of the falsehood, i.e. the

10

gross discrepancy between the amount of income on the first and second tax returns, supports an inference that the Debtor intended to deceive the Plaintiff. *Liming,* 797 F.2d at 898.[3]

The Debtor asserts that his accountant, Athena McDevitt ("McDevitt") prepared the 2000 tax return. Due to a medical condition caused by an automobile accident, McDevitt did not prepare the Debtor's 2000 tax return until February of 2002. Fulgenzi Affidavit ¶¶ 21-22. However, unbeknownst to the Debtor, the accountant was disciplined in 1999 by the state Public Accountancy Board and had surrendered her license in 2001. Fulgenzi Affidavit ¶¶ 20-31 and Ex. A to Fulgenzi Affidavit. The Debtor also states that all of the supporting financial documents for Fugi Corporation were at McDevitt's home. The Debtor was unable to obtain them to give to another accountant because McDevitt refused accept his calls. Fulgenzi Affidavit ¶¶ 26, 28 and 29. The Debtor argues that in 2000, Fugi Corporation was paying his mortgage expenses, which totaled more than $6,000.00 per month raising the inference that he could have considered the statements of income from Fugi Corporation were to some extent true. Fulgenzi Affidavit at ¶ 33.

Although the evidence could support inferences that the Debtor intended to deceive the Plaintiff, the Debtor has shown that disputed fact issues remain on the issue of intent to deceive precluding a summary judgment on this element of the claim of non-dischargeability. *See Jones v.*

---

[3]In *Liming*, the Tenth Circuit held that a loan application, which stated that a debtor had a net worth of $183,000 and total debts of $88,000, but which was followed 76 days later by a financial statement which showed a net worth of only $33,000 and total debts of $264,000, was submitted with an intent to deceive and that a debt incurred on the basis of this financial statement could be held non-dischargeable in bankruptcy under 11 U.S.C.A. § 523(a)(2)(B). The court held that the finding of intent to deceive was not clearly erroneous stating that the dramatic disparity in the figures alone showed at least a reckless disregard for the truth. *Id.*

11

*Novastar Mortgage, Inc. (In re Jones),* 298 B.R. 451, 463 (Bankr. D. Kan. 2003)(denying summary judgment because debtor offered innocent explanation of falsehood thereby creating fact issue and noting that intent requires consideration of intangible factors such as witness credibility and can rarely be resolved by summary judgment).

For the reasons discussed above, the Court will grant the Plaintiff's Motion for Summary Judgment on each element of its claim under § 523(a)(2)(B) except on the element of the Debtor's intent to deceive. That issue remains for a trial on the merits. An appropriate order will be entered in accordance with this Memorandum Opinion.

MARK B. McFEELEY
UNITED STATES BANKRUPTCY JUDGE

I certify that on the date shown on the attached document verification, a true and correct copy of the foregoing was either electronically transmitted, faxed, delivered or mailed to the listed counsel and/or parties.

Michael K. Daniels
Attorney for Debtor
P.O. Box 1640
Albuquerque, NM 87103-1640

Kevin D. Hammar
Attorney for Plaintiff
1212 Pennsylvania NE
Albuquerque, NM 87110

Ellen C. Snyder
Law Clerk